UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
FRANKIE PIÑERO,                       :   10 Civ. 4803 (JSR) (JCF)
                                      :
          Plaintiff,                  :        REPORT AND
                                      :        RECOMMENDATION
     - against -                      :
                                      :
JOHN CASEY; ROCKLAND COUNTY           :
NARCOTIC TASK FORCE, WILLIAM CLARK     :
(CHIEF) OF THE ROCKLAND COUNTY OF     :
THE CORRECTIONAL FACILITY, AND        :
THOMAS ZUGIBE; HEAD DISTRICT          :
ATTORNEY, MARIA T. DESIMONE;          :
SENIOR ASSISTANCE DISTRICT            :
ATTORNEY, DAVID AS (JOHN DOE)         :
DELAROSA; POLICE OFFICER OF THE       :
HAVERSTRAW TOWN POLICE DEPARTMENT,    :
                                      :
          Defendants.                 :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE JED S. RAKOFF, U.S.D.J.

     Frankie Piñero brings this action pro se pursuant to 42 U.S.C.

§ 1983 and state law against defendants John Casey of the Rockland

County Narcotics Task Force; William J. Clark, Chief of the

Rockland County Correctional Facility; Thomas Zugibe, District

Attorney; Maria T. DeSimone, Senior Assistant District Attorney;

and Police Officer David DelaRosa (John Doe) of the Haverstraw Town

Police Department, alleging violations of his Fourth, Fifth, and

Sixth Amendment rights[1] in connection with his arrest, criminal

_____

     [1] In addition to the claims listed here, the plaintiff also
asserts unspecified violations of his Fourth, Fifth, and Sixth
Amendment rights.  In attempting to address these claims, I have
construed the plaintiff's Amended Complaint to encompass any

                                1

prosecution, and incarceration.  The plaintiff asserts claims for (1) wrongful imprisonment, (2) malicious prosecution, (3) denial of an adequate law library, (4) denial of free postage while incarcerated, (5) denial of due process resulting from his segregated confinement in prison, and (6) denial of due process in connection with prison disciplinary proceedings.  Mr. Piñero also asserts various state law claims.  The plaintiff seeks dismissal of his criminal cases[2] and $2.5 billion in punitive and compensatory damages.  Defendants now move under Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings dismissing the plaintiff's Amended Complaint for failure to state a cause of action.  For the reasons that follow, I recommend that the motions be granted.

Background

On January 8 and January 9, 2009, Mr. Piñero allegedly sold crack cocaine to an undercover police officer but was not arrested at that time.  (Indictment No. 2009-471 dated October 2, 2009 ("Indictment"), attached as Exh. C to Declaration of Robert Weissman dated August 11, 2011 ("Weissman Decl.")).

---

argument it may reasonably contain.

[2] The plaintiff's criminal cases have already been dismissed. (Transcript of plea allocution dated May 18, 2010 ("Plea II"), attached as Exh. F to Weissman Decl., at 3; Transcript of Calendar Call dated August 6, 2010 ("Calendar Call"), attached as Exh. H to Weissman Decl.).

On July 1, 2009, Mr. Piñero was again arrested for selling crack. (Plaintiff's Amended Complaint dated December 23, 2010 ("Am. Compl.") at 5). The arresting officer was David DelaRosa of the Town of Haverstraw Police Department. (Affidavit of David DelaRosa dated July 1, 2009 ("DelaRosa Aff."), attached as Exh. D to Weissman Decl.). As a result of this arrest, the plaintiff was incarcerated at Rockland County Correctional Facility until September 3, 2009, when he was released on his own recognizance. (Addendum[3] to Am. Compl. at 2-3).

On October 2, 2009, a grand jury indicted Mr. Piñero for the January 8 and 9 drug sales, charging him with two counts of Criminal Sale of a Controlled Substance in the Third Degree under New York Penal Law ("NYPL") § 220.39, and two counts of Criminal Possession of a Controlled Substance in the Third Degree under NYPL § 220.16. (Indictment). Judge Catherine Bartlett of the County Court for Rockland County issued a warrant for Mr. Piñero's arrest the same day. (Warrant of Arrest dated October 2, 2009 ("Arrest Warrant"), attached as Exh. 1 to Plaintiff's Complaint dated June 21, 2010 ("Compl.")). On the basis of this warrant, Mr. Piñero was again arrested by Officer DelaRosa on October 7, 2009, and

---

[3] The plaintiff has attached a ten-page addendum to his Amended Complaint in which he sets forth additional facts. The addendum will be cited as "Add." followed by the corresponding page number.

subsequently incarcerated at Rockland County Correctional Facility. (Add. at 3-4a[4]; Am. Compl. at 7).  When the plaintiff arrived at the police station, John Casey, a member of the Rockland County Narcotic Task Force, told him, "We got you once again Piñero," and displayed the warrant for his arrest.  (Add. at 4a).

On November 9, 2009, the plaintiff's defense attorney filed a motion seeking various forms of relief, including dismissal of the indictment "on the grounds that the evidence presented to the grand jury failed to establish legally sufficient grounds for all counts returned or any lesser offenses."[5]  (Notice of Motion, Indictment

---

[4] The addendum includes two pages numbered "4."  I will refer to them as "4a" and "4b."

[5] Specifically, the motion requested an order (1) suppressing any identification of Mr. Piñero, or in the alternative, granting a suppression hearing on the admissibility of any such identification; (2) directing inspection of the grand jury minutes to determine whether the evidence and legal instructions provided were both legally sufficient and correct; (3) dismissing the indictment on the grounds that the evidence failed to establish legally sufficient grounds for all counts returned or any lesser included offenses; (4) compelling the prosecution to provide the defendant with the name and date of birth of the complaining witness; (5) ordering a hearing to determine the admissibility of audiotapes purporting to contain evidence of the charges contained in the indictment; and (6) compelling the prosecution to provide a list of any charged or uncharged crimes or acts they intended to introduce for impeachment purposes, or in their case-in-chief. (Motion to Dismiss Indictment).

Mr. Piñero alleges that he also submitted a pro se motion to dismiss the indictment that Justice William Kelly of the New York State Supreme Court, Rockland County, did not grant.  (Add. at 6; Piñero Motion to Dismiss Indictment No. 2009-471 dated February 17, 2010 ("Pro se Motion to Dismiss Indictment"), attached as Exh. 6 to

No. 2009-471 dated November 9, 2009 ("Motion to Dismiss Indictment"), attached as Exh. 4 to Compl.).  On January 4, 2010, Justice Kelly issued a Decision and Order denying the motion to dismiss, finding that the prosecution's presentation of evidence "was legally sufficient to support the charges within the indictment," but granting the defense request for a hearing on the admissibility of the plaintiff's past crimes or bad acts and a hearing to determine the propriety of the police identification procedures.  (Decision and Order dated Jan. 4, 2010, attached as Exh. 5 to Compl., at 1-2).

On February 17, 2010, Mr. Piñero pled guilty to one count of Criminal Sale of a Controlled Substance in the Third Degree based on an agreement that the prosecution would recommend one year imprisonment.  (Transcript of plea allocution dated February 17, 2010 ("Plea I"), attached as Exh. E to Weissman Decl., at 2-5).  The plaintiff allocuted as follows:

> [JUSTICE KELLY]: Your attorney said you wish to plead guilty to the first count of this indictment, criminal sale of a controlled substance in the third degree, a Class B felony.
>
> [MR. PIÑERO]: Yes, sir.

---

Compl.).  Although the plaintiff attached a copy of this motion to his Complaint, there is no evidence it was ever filed with the court or ruled on by Justice Kelly.  The motion is dated the same date as Mr. Piñero's first guilty plea.  (Pro se Motion to Dismiss Indictment).

> . . . .
>
> [JUSTICE KELLY]: The [prosecution] allege[s] in the County of Rockland on January 8, 2009 you sold a narcotic drug, cocaine, to another individual for a sum of currency.
>
> Do you admit that?
>
> [MR. PIÑERO]: Yes.

(Plea I at 3, 6). Assistant District Attorney Jessica Fein then conducted voir dire examination of the plaintiff:

> [THE PROSECUTOR]: On January 8, 2009 you were on Main Street in Haverstraw, New York?
>
> [MR. PIÑERO]: Yes.
>
> [THE PROSECUTOR]: And at that time you sold two vials containing a substance that was cocaine for $60 United States currency to another person?
>
> [MR. PIÑERO]: Yes.
>
> . . . .
>
> [THE PROSECUTOR]: Do you have any reason to refute that the substance you sold was cocaine?
>
> [MR. PIÑERO]: No, I don't.
>
> [THE PROSECUTOR]: You believe it to be cocaine?
>
> [MR. PIÑERO]: Yes.
>
> . . . .
>
> [THE PROSECUTOR]: And you know it was unlawful to sell cocaine in the State of New York?
>
> [MR. PIÑERO]: Yes, ma'am.

(Plea I at 6-8).

After voir dire was concluded, Mr. Piñero told Justice Kelly that he understood that the prosecution would recommend a sentence of one year.  (Plea I at 9).  In his Amended Complaint, the plaintiff states, "I cop-out to one year in the County Jail," explaining, "[m]y lawyer got four years down for one year." (Add. at 7, 8).

Mr. Piñero subsequently denied his guilt to the probation department, stating that he had an alibi -- namely, that he and his girlfriend were in a hotel on January 8 and 9, 2009.  (Plea II at 3).  He also told the probation department that "[t]he indictment is not signed and it's fabricated and bogus." (Plea II at 3).  On May 12, 2010, Justice Kelly permitted the plaintiff to withdraw his guilty plea.  (Plea II at 6).

On May 18, 2010, the plaintiff again pled guilty, this time on the basis of an agreement that the prosecution would recommend one year imprisonment and dismiss the unindicted case from July 1, 2009.  (Plea II at 3).  The plaintiff allocuted as follows:

> [JUSTICE KELLY]:  So your formal application will be to enter a plea of guilty to all four counts of the indictment, first and third counts, criminal sale of a controlled substance, third; second and fourth counts, criminal possession of a controlled substance, third degree, all "B" felonies, correct?
>
> [THE PROSECUTOR]: Yes.
>
> [JUSTICE KELLY]: Did you hear that, Mr. Piñero, is that what you wish to do?

[MR. PIÑERO]: Yes.

. . . .

[JUSTICE KELLY]: So, Mr. Piñero, you understand that you're pleading guilty to all four of the "B" felonies in this indictment, correct?

[MR. PIÑERO]: Yes, sir.

. . . .

[JUSTICE KELLY]: Is it your position that you're not guilty or you're admitting that you are guilty?

[MR. PIÑERO]: I'm admitting at this point that I am guilty.

[JUSTICE KELLY]: All right. . . . [Y]ou claim[ed] that you had an alibi . . . you were with your girlfriend, is that your position now or do you admit that you are now, in fact, guilty?

[MR. PIÑERO]: I admit that I sold drugs.

. . . .

[JUSTICE KELLY]: [Y]ou wish to enter the pleas of guilty to these felonies today, is that correct?

[MR. PIÑERO]: Yes, sir.

. . . .

[JUSTICE KELLY]: Now, the indictment herein alleges that you committed these crimes in that on January 8, 2009, in the County of Rockland, you knowingly and unlawfully sold a narcotic drug, namely, cocaine to another individual for a sum of currency, that's the first count.

The second count alleges the same thing except it says you possessed that cocaine with the intent to sell it in the County of Rockland on that date.

And the third and fourth counts also refer to

criminal sale of a controlled substance in the third degree and criminal possession of a controlled substance in the third degree but a different date, namely January 9th.  It alleges that you sold a narcotic drug, cocaine, to an individual for $50 of currency.  And it also alleges on that date that you possessed cocaine with intent to sell.

So do you admit your guilt on all of those counts?

[MR. PIÑERO]: Yes sir, I do.

(Plea II at 9-16).  Pursuant to the plea agreement between Mr. Piñero and the District Attorney's office, Justice Kelly sentenced the plaintiff to one year imprisonment, and the July 1, 2009 charges were dismissed.  (Plea II at 3-4, 18).

While incarcerated at Rockland County Correctional Facility, Mr. Piñero filed several grievances, including one in which he complained of mistreatment by a correctional officer who threw seven of the plaintiff's stamps in the garbage while searching his cell, and another in which he alleged that he was being held under the wrong booking number.  (Grievance #2010-08 dated March 18, 2010, and Grievance # 2010-12 dated April 10, 2010, attached as Exh. A to Affidavit of Brian M. Callahan dated August 9, 2011 ("Callahan Aff."), attached to Weissman Decl.).  None of the plaintiff's grievances was sustained.  (Callahan Aff., Exh. A).

Mr. Piñero further alleges that, while incarcerated, he "received excessive punishment for infraction[s], 90 days, then 60 days, 45 days, 15 days, 5 days, 15 days, total 10 months lockdown,

23 hours lockdown one hour rec[reation]." (Am. Compl. at 7). Additionally, the plaintiff claims that his disciplinary hearings failed to comply with due process for "lack of witnesses and hearing tapes to record." (Am. Compl. at 7). Finally, according to Mr. Piñero, the facility law library was "adequate to inadequate." (Am. Compl. at 4).

On June 16, 2010, Mr. Piñero completed his sentence (including the period of incarceration imposed in connection with the July 1, 2009 arrest), and Justice Kelly issued an order releasing him from Rockland County Correctional Facility. (Order to Release on Own Recognizance dated June 16, 2010, attached as Exh. G to Weissman Decl.). On August 6, 2010, the District Attorney moved to dismiss the indictment against the plaintiff in the interest of justice. (Calendar Call).

Mr. Piñero filed a Complaint with this Court on May 20, 2010, while still incarcerated at Rockland County Correctional Facility. (Compl. at 1). On December 23, 2010, he filed an Amended Complaint adding John Casey of the Rockland County Narcotic Task Force as a defendant. (Amend. Compl. at 3).

Discussion

On August 12, 2011, Mr. Casey, Mr. Clark, Mr. Zugibe, and Ms. DeSimone (the "County defendants") moved to dismiss on the grounds that (1) the plaintiff's state law claims are barred because he

failed to comply with Section 52 of the New York State County Law and Section 50-e of the General Municipal Law; (2) the County defendants are protected from liability by prosecutorial and sovereign immunity; (3) the plaintiff failed to allege personal involvement by the County defendants in the actions underlying his § 1983 claims; (4) the plaintiff failed to set forth a policy on which his § 1983 claims can be based; (5) there was probable cause for the plaintiff's prosecution, and his imprisonment was privileged; (6) the plaintiff failed to exhaust his administrative remedies concerning the conditions of his confinement; (7) the conditions of confinement claims are moot; (8) the plaintiff lacks standing based on his failure to allege actual damages resulting from the conditions of his confinement; (9) the plaintiff failed to allege a physical injury in support of his mental distress claim; and (10) the County defendants are immune from punitive damages. (Memorandum of Law in Support of Defendants Casey, Clark, Zugibe, and DeSimone's Motion to Dismiss ("Def. Memo.") at 25). Officer DelaRosa and the Town of Haverstraw moved to dismiss Mr. Piñero's claims as to them, relying on the first, fourth, and fifth grounds asserted by the County defendants. (Memorandum in Support of Defendants, Police Officer David DelaRosa and Town of Haverstraw's Motion for Judgment on the Pleadings ("DelaRosa Memo.") at 1, 5-6).

A. <u>Legal Standard for Dismissal</u>

When considering a motion to dismiss,[6] a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (per curiam); <u>Freedom Holdings, Inc. v. Spitzer</u>, 357 F.3d 205, 216 (2d Cir. 2004). A complaint need not contain detailed factual allegations, but must contain more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, __, 129 S. Ct. 1937, 1949-50 (2009) (citing <u>Bell Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" <u>Id.</u> at 1949 (citing <u>Twombly</u>, 550 U.S. at 570). Where the complaint's factual allegations permit the court to infer only that it is possible, but not plausible, that misconduct occurred, the complaint fails to meet the general pleading requirements of Rule

---

[6] Although the defendants have brought the instant motion pursuant to Rule 12(c), "the standard for a motion for judgment on the pleadings under Rule 12(c) is the same as that applicable to a motion to dismiss for failure to state a claim pursuant to 12(b)(6)." <u>Barnett v. Mount Vernon Police Department</u>, No. 10 Civ. 3899, 2012 WL 733865, at *1 n.1 (S.D.N.Y. Mar. 5, 2012) (citing <u>National Association of Pharmaceutical Manufacturers, Inc. v. Ayerst Laboratories, Divison of/and American Home Products Corp.</u>, 850 F.2d 904, 909 n.2 (2d Cir. 1988)).

8.  Id. at 1950 (citing Fed. R. Civ. P. 8(a)(2)).

Pro se complaints are held to less stringent standards than those drafted by lawyers. Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (per curiam); Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008) (citing Erickson, 551 U.S. at 94).  In fact, pleadings of a pro se party should be read "'to raise the strongest arguments that they suggest.'"  Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001) (quoting Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996)).  Even after Iqbal, which imposed heightened pleading standards for all complaints, pro se complaints are to be liberally construed.  See Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).  Dismissal of a pro se complaint is nevertheless appropriate where a plaintiff has clearly failed to meet minimum pleading requirements.  See Rodriquez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).

On a motion to dismiss, the court is generally limited to reviewing the allegations in the complaint and documents attached to it or incorporated by reference.  See Gryl ex rel. Shire Pharmaceuticals Group PLC v. Shire Pharmaceuticals Group PLC, 298 F.3d 136, 140 (2d Cir. 2002).  The court may also consider documents necessarily relied upon by the plaintiff in drafting the

complaint.[7]  <u>Chambers v. Time Warner, Inc.</u>, 282 F.3d 147, 152-54

(2d Cir. 2002).

B.  <u>Section 1983</u>

Section 1983 "is not itself a source of substantive rights,

but a method for vindicating federal rights elsewhere conferred by

those parts of the United States Constitution and federal statutes

that it describes."  <u>Baker v. McCollan</u>, 443 U.S. 137, 145 n.3

(1979).  Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory
> or the District of Columbia, subjects, or causes to be
> subjected, any citizen of the United States or other
> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law . . . .

42 U.S.C. § 1983.  To state a claim under Section 1983, a plaintiff

must allege that "(1) the challenged conduct was attributable at

least in part to a person who was acting under color of state law

and (2) the conduct deprived the plaintiff of a right guaranteed

under the Constitution of the United States."  <u>Snider v. Dylag</u>, 188

---

[7]  A court may also consider matters of public record, including arrest reports, indictments, and criminal disposition data, <u>Vasquez v. City of New York</u>, No. 00 Civ. 4606, 2000 WL 869492, at *2 (S.D.N.Y. June 29, 2000), as well as transcripts of court proceedings and judicial opinions.  <u>Hayes v. Perotta</u>, 751 F. Supp. 2d 597, 599 (S.D.N.Y. 2010) (citing <u>In re Morgan Stanley Information Fund Securities Litigation</u>, 592 F.3d 347, 354 n.5 (2d Cir. 2010).

F.3d 51, 53 (2d Cir. 1999).

Personal involvement by the defendant in any alleged constitutional violation is a prerequisite to an award of damages under Section 1983. Hernandez v. Keane, 341 F.3d 137, 144-45 (2d Cir. 2003); Blyden v. Mancusi, 186 F.3d 252, 264 (2d Cir. 1999). Therefore, "to state a claim for damages under Section 1983, the plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" Harris v. Westchester County Department of Corrections, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) (alteration in original) (quoting Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001)). "A supervisory official is not liable under section 1983 by virtue of his subordinate's actions; rather, he must be shown to have 'some personal responsibility.'" Murray v. Koehler, 734 F. Supp. 605, 606 (S.D.N.Y. 1990) (quoting Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989)).

A supervisory official may be found to have personal involvement in a constitutional violation if: (1) the official directly participated in the violation; (2) the official, "after being informed of the violation through a report or appeal, failed to remedy the wrong"; (3) the official "created a policy or custom

under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom"; (4) the official "was grossly negligent in supervising subordinates" who caused the unlawful condition or event; or (5) the official "exhibited deliberate indifference [to the plaintiff's rights] by failing to act on information indicating that unconstitutional acts were occurring." Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (citing Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994); see also Plair v. City of New York, 789 F. Supp. 2d 459, 465 (S.D.N.Y. 2011) (holding that "the traditional [Second Circuit] categories of supervisory liability still apply" in deliberate indifference cases after Iqbal); Jackson v. Goord, 664 F. Supp. 2d 307, 324 & n.7 (S.D.N.Y. 2009) (same).

     1.  Unlawful Imprisonment

    "The elements of a false imprisonment claim under federal law are substantially the same as under New York law." Rutigliano v. City of New York, 326 Fed. Appx. 5, 7 (2d Cir. 2009) (citing Russo v. City of Bridgeport, 479 F.3d 196, 204 (2d Cir. 2007)). A claim of false imprisonment under state law requires a showing "'that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to the confinement, and that the confinement was not otherwise

16

privileged.'"   Id. (citing Martinez v. City of Schenectady, 97
N.Y.2d 78, 85, 735 N.Y.S.2d 868, 872 (2001).   "Privilege" may be
established by showing the existence of probable cause for the
arrest or detainment.   Jocks v. Tavernier, 316 F.3d 128, 135 (2d
Cir. 2003).   Accordingly, probable cause is a complete defense to
a false imprisonment claim.   Blasini v. City of New York, No. 11
Civ. 3022, 2011 WL 6224605, at *3 (S.D.N.Y. December 14, 2011); see
also Rutigliano, 326 Fed. Appx. at 7 ("We have held that a finding
of probable cause will defeat [New York] state tort law claims for
. . . false imprisonment, and hence § 1983 false imprisonment
claims premised on New York law." (citing Zanghi v. Incorporated
Village of Old Brookville, 752 F.2d 42, 45 (2d Cir. 1985)).

        "[I]ndictment by a grand jury creates a presumption of
probable cause that may only be rebutted by evidence that the
indictment was procured by 'fraud, perjury, the suppression of
evidence or other police conduct undertaken in bad faith.'"   Savino
v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003) (citing Colon
v. City of New York, 60 N.Y.2d 78, 83, 468 N.Y.S. 2d 453, 456
(1983)); see, e.g., Williams v. City of New York, 368 Fed. Appx.
263, 264 (2d Cir. 2010) (finding false imprisonment claim "barred
as a matter of law because of the unrebutted presumption of
probable cause created by the grand jury's indictment of [the
plaintiff and] because [his criminal] charges were not terminated

in a manner indicating his innocence.").

In addition, "[w]here an arrest is made pursuant to a warrant, there can be no claim for . . . unlawful imprisonment." Bender v. City of New York, No. 09 Civ. 3286, 2011 WL 4344203, at *4 (S.D.N.Y. Sept. 14, 2011); Davis v. New York State Division of Parole, No. 07 Civ. 5544, 2008 WL 3891524, at *14 (S.D.N.Y. Aug. 20, 2008); see also Broughton v. State, 37 N.Y.2d 451, 457, 373 N.Y.S.2d 87, 94 (1975) ("[A]n unlawful detention gives rise to a cause of action for false imprisonment except where the confinement was by arrest under a valid process issued by a court having jurisdiction." (internal citations and quotations omitted)).

Finally, where the plaintiff was convicted of the charges against him, that conviction normally constitutes "'conclusive evidence of probable cause.'" Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Broughton, 37 N.Y.2d at 458, 373 N.Y.S.2d at 95); Cameron v. Fogarty, 806 F.2d 380, 387 (2d Cir. 1986). And since "a guilty plea is the equivalent of a conviction," Saddler v. United States, 531 F.2d 83, 85 (2d Cir. 1976), a guilty plea will also bar a Section 1983 false imprisonment claim. See, e.g., Hernandez v. City of New York, No. 00 Civ. 9507, 2004 WL 2624675, at *5 (S.D.N.Y. Nov. 18, 2004); Papeskov v. Brown, No. 97 Civ. 5351, 1998 WL 299892, at *5 (S.D.N.Y. June 8, 1998) (stating that "a plea of guilty, even to a charge lesser than that for which the

18

plaintiff was arrested, bars a § 1983 action" for false imprisonment).

In this case, Mr. Piñero's confinement was supported by overwhelming evidence of probable cause, as (a) he was indicted by a grand jury (b) on evidence that Justice Kelly later confirmed to be legally sufficient to support the charges, (c) arrested pursuant to a warrant issued by Judge Bartlett, and (d) pled guilty to the charges against him. Furthermore, the plaintiff's guilty pleas clearly indicate that he consented to his one-year sentence of imprisonment, thereby negating the third element of his false imprisonment claim. Moreover, Mr. Piñero has not presented evidence that the indictment was obtained by "fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith," Savino, 331 F.3d at 72 (internal quotation marks omitted), or that the warrant was issued pursuant to deficient process or by a court lacking jurisdiction, see Broughton, 37 N.Y.2d at 457, 373 N.Y.S.2d at 94.

As Mr. Piñero's confinement was plainly supported by probable cause, and he consented to his prison sentence in his guilty pleas, his imprisonment was privileged. Therefore, he cannot establish either the third or fourth elements of his false imprisonment claim, and it fails accordingly.

2.   <u>Malicious Prosecution</u>

The defendants contend that the plaintiff's malicious prosecution claim is barred by the doctrine of absolute prosecutorial immunity and the Eleventh Amendment. (Def. Memo. at 9-10). Because defendants Mr. Zugibe and Ms. DeSimone are protected by prosecutorial immunity in this case, I will not address the Eleventh Amendment argument.[8]

a.   <u>Absolute Prosecutorial Immunity</u>

Absolute immunity applies where the prosecutor performs the traditional functions of an advocate. <u>See</u> <u>Kalina v. Fletcher</u>, 522 U.S. 118, 131 (1997); <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976) (conduct in initiating prosecution and presenting State's case covered by absolute immunity); <u>Dory v. Ryan</u>, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate."). In determining whether a prosecutor enjoys absolute immunity, courts examine the nature of the function performed. <u>Buckley v. Fitzsimmons</u>, 509 U.S. 259, 269 (1993); <u>Doe v. Phillips</u>, 81 F.3d 1204, 1209 (2d Cir. 1996). To lose his entitlement to absolute immunity, the

---

[8] As Mr. Piñero does not allege facts suggesting Officer DelaRosa was personally involved in this cause of action, or make an allegation of conspiracy, only the prosecutors' conduct is discussed here.

prosecutor must act outside his role as an advocate or beyond the scope of his authority.  See Buckley, 509 U.S. at 273; Fields v. Soloff, 920 F.2d 1114, 1119 (2d Cir. 1990).  For example, where a prosecutor acts in an investigatory or administrative capacity, absolute immunity is not available.  See Mitchell v. Forsyth, 472 U.S. 511, 520 (1985) (holding Attorney General not absolutely immune for authorizing a warrantless wiretap); Buckley, 509 U.S. at 262-63, 276 (denying prosecutors absolute immunity for fabricating evidence "during the early stages of the investigation").  Immunity will be denied, however, only where the prosecutor acts "'without any colorable claim of authority.'"  Bernard v. County of Suffolk, 356 F.3d 495, 504 (2d Cir. 2004) (quoting Schloss v. Bouse, 876 F.2d 287, 291 (2d Cir. 1989)).

The plaintiff's only challenge to Mr. Zugibe's and Ms. DeSimone's conduct cognizable under Section 1983[9] concerns his

_____

[9] Defendants correctly argue that the plaintiff's complaints concerning his suppression motion "which was not followed through with" (Add. at 6), his alibi defense (Add. at 4-5), and Mr. Zugibe and Ms. DeSimone's decision to prosecute the charges against him on a sealed indictment more than six months after his arrest (Am. Compl. at 4), are defenses to his criminal charges properly brought in connection with that case, "not in a separate civil action designed to collaterally attack the charges." (Def. Memo. at 16). In addition, with respect to this third issue, Mr. Piñero appears to confuse the period of limitation under New York's "speedy trial" statute, which requires the prosecution to announce their readiness for trial within "six months of the commencement of a criminal action wherein a defendant is accused of one or more offenses, at least one of which is a felony," New York Criminal Procedure Law

allegation that the indictment was "fabricated" and "bogus" because it was not signed by the grand jury foreman and the date stamp was not notarized.[10]  (Add. at 6).  In support of his claim, Mr. Piñero has submitted an unsigned, unnotarized copy of his indictment as evidence that it was fraudulent.  (Indictment 2009-471, Plaintiff's

---

("CPL") § 30.30(1)(a), with the time allotted for commencement of a criminal action, which is measured from the commission of the crime.  See Gary Muldoon, Handling a Criminal Case in New York § 13:2 (2011).  Commencement is defined by the CPL as the date when the accusatory instrument, such as an indictment, is filed against a defendant in a criminal court.  See CPL §§ 1.20(1), (17).  The CPL mandates that prosecution of the Class B felonies for which Mr. Piñero was charged "must be commenced within five years after the commission thereof."  CPL § 30.10(2)(b).

Here, the plaintiff was arrested for the charges in question on January 8 and 9, 2009, and the prosecution filed the sealed indictment on October 2, 2009, thereby commencing the criminal action against Mr. Piñero.  That the indictment was sealed is of no consequence.  See Muldoon, § 3:3 ("An exception to the general rule that a criminal case is commenced by the filing of an accusatory instrument in the local criminal court occurs when the prosecution proceeds initially with grand jury action and obtains a 'sealed indictment.'  This indictment is then filed in a superior court to commence the criminal action.").  As commencement occurred well within the five-year period of limitation for prosecution of a Class B felony, the plaintiff's argument fails.

[10]  The defendants also contend that Mr. Piñero's fraudulent indictment claim is a defense to his criminal charges, and not a basis for his Section 1983 action.  (Def. Memo. at 16).  However, though barred in this case, a fraudulent indictment claim in which the underlying conviction has been invalidated can provide the basis for recovery under Section 1983.  See Heck v. Humphrey, 512 U.S. 477, 487 (1994).  Furthermore, an indictment that has been "procured by 'fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith,'" Savino, 331 F.3d at 72, can be the basis for a claim of malicious prosecution, as it speaks to the issue of probable cause.

Copy, dated Oct. 2, 2009, attached as Exh. 2 to Compl.).  The defendants, on the other hand, have submitted a copy of the indictment that is both signed by the grand jury foreperson and contains a notarized date stamp.  (Indictment).  Thus, it appears that, at worst, Mr. Piñero was merely given an unsigned copy of the indictment, which is insufficient to sustain a claim for any constitutional violation, let alone overcome the immunity afforded prosecutors acting within the scope of their authority, as is the case here.

Moreover, even if the plaintiff had plausibly shown that the indictment was indeed fraudulent, his claim would be barred by Heck v. Humphrey, which precludes Section 1983 actions for monetary damages if success on such claims would necessarily call into question the validity of the underlying conviction and sentence. 512 U.S. at 487.  Until a Section 1983 plaintiff has proven that his conviction or sentence has been "reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus," the court must dismiss the claim.  Id. at 486-87; see, e.g., McNeill v. People of City and State, No. 06 CV 4843, 2006 WL 3050867, at *3 (E.D.N.Y. Oct. 24, 2006) (holding that where Section 1983 plaintiff pled guilty to criminal charges, malicious prosecution claim was barred by Heck); Spies v. Brown,

23

No. 98 CV 4708, 2002 WL 441991, at *2 (E.D.N.Y. March 13, 2002) (same).  Here, if Mr. Piñero were to succeed on his fraudulent indictment claim, it would necessarily imply the invalidity of his conviction, and consequently be barred by Heck.

Thus, for the reasons stated above, the malicious prosecution claims against Mr. Zugibe and Ms. DeSimone must be dismissed.

> b.   The Merits

Even if prosecutorial immunity did not attach in this case, the plaintiff's malicious prosecution claim nevertheless fails on the merits.

"In order to prevail on a [Section] 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, and must establish the elements of a malicious prosecution claim under state law." Manganiello v. City of New York, 612 F.3d 149, 160-61 (2d Cir. 2010) (internal citations omitted).  In order to allow accusers "room for benign misjudgments," New York law "places a heavy burden on malicious prosecution plaintiffs."  Smith-Hunter v. Harvey, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 440 (2000).  Thus, a malicious prosecution claim must include four elements: "(1) the initiation or continuation of a criminal proceeding against [the] plaintiff; (2) termination of the proceeding in [the] plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4)

actual malice as a motivation for [the] defendant's actions."
Manganiello, 612 F.3d at 161 (internal quotation marks omitted).
In addition, a Section 1983 plaintiff must also demonstrate a
"sufficient post-arraignment liberty restraint to implicate the
plaintiff's Fourth Amendment rights." Rohman v. New York City
Transit Authority, 215 F.3d 208, 215 (2d Cir. 2000).

As discussed, Mr. Piñero's arrest and confinement was
supported by overwhelming evidence of probable cause, and he
therefore cannot establish the third element of his malicious
prosecution claim. See Savino, 331 F.3d at 72 ("[T]he existence of
probable cause is a complete defense to a claim of malicious
prosecution in New York."). Nor can the plaintiff establish the
second element, as "[i]t is well settled that a guilty plea is not
a termination in favor of the accused for purposes of a malicious
prosecution claim." Rivera v. City of Yonkers, 470 F. Supp. 2d
402, 408 (S.D.N.Y. 2007) (citing Posr v. Court Officer Shield #207,
180 F.3d 409, 418 (2d Cir. 1999)). Moreover, that the charges were
later dismissed "in the interest of justice" is of no consequence,
for the Second Circuit has held that "as a matter of law, [such a
dismissal] cannot provide the favorable termination required as the
basis for a claim of malicious prosecution." Pinaud v. County of
Suffolk, 52 F.3d 1139, 1154 (2d Cir. 1995) (alteration in original)
(citing Hygh v. Jacobs, 961 F.2d 359, 367 (2d Cir. 1992)).

25

Therefore, as Mr. Piñero cannot establish either the second or third elements of his claim, it fails on the merits as well.

   C.   The Remaining County Defendants

      1.   Claims Against Defendant Casey

The plaintiff has failed to plead any facts that would support the imposition of liability on Mr. Casey.   In fact, the only allegation concerning Mr. Casey is that, upon Mr. Piñero's arrival at the police station following the October 7, 2009 arrest, he told the plaintiff, "We got you once again Piñero," and showed him the arrest warrant.   (Add. at 6).   Mr. Casey is not alleged to have directly participated in any wrongdoing, nor has the plaintiff alleged facts that would otherwise demonstrate personal involvement by any of the means set forth above.   Thus, the plaintiff's Section 1983 claims against Mr. Casey must be dismissed.

      2.   Claims Against Defendant Clark

In his Amended Complaint, Mr. Piñero makes several claims concerning the conditions of his confinement at Rockland County Correctional Facility, including that: (1) the Correctional Facility has an "adequate to inadequate" law library; (2) he was held under the wrong booking number; (3) he was denied free postage; (4) he received excessive discipline for prison infractions, including 230 days in "lockdown," or disciplinary confinement; and (5) his disciplinary hearings did not comply with

due process.  (Am. Compl. at 4, 7; Add. at 8-10).  However, as the plaintiff does not plead any facts indicating that Mr. Clark, the only Correctional Facility defendant (or any other defendant for that matter) was personally involved in or responsible for any of the alleged deprivations arising out of his confinement, his claims must be dismissed.

      a.  <u>Conditions of Confinement Claims</u>

         i.  <u>Failure to State a Cause of Action</u>

Even if Mr. Piñero were able to establish the requisite personal involvement, however, his first, second, and third conditions of confinement claims would still fail to state a cause of action.  First, aside from his bare allegation that the law library was "adequate to inadequate," he alleges no facts indicating that he suffered any actionable harm as a result.  <u>See Lewis v. Casey</u>, 518 U.S. 343, 351, 360 n.7 (1996) (holding that, as "[c]ourts have no power to presume and remediate harm that has not been established," an inmate must therefore show "that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim" to establish a constitutional violation).  Nor does the plaintiff allege that the facility's postage policy (or the loss of his stamps during the search of his cell) frustrated his efforts to pursue a nonfrivolous claim, <u>see id.</u> at 353, "prevented [him] from communicating with the courts or [his] attorney," or

27

resulted in him "miss[ing] deadlines or fail[ing] to comply with court orders," Benjamin v. Kerik, 102 F. Supp. 2d 157, 180 (S.D.N.Y. 2000).   Furthermore, the plaintiff has not made a plausible claim that he was injured by the alleged clerical error resulting in his being held under an incorrect booking number. See, e.g., Williams v. Williams, No. 1:10cv34, 2010 WL 779290, at *6 (M.D. Ala. March 5, 2010) (to survive a motion to dismiss, "[p]laintiff must allege more than mere mistakes or clerical errors, but rather facts showing" her rights were violated); Davis v. Lay, No. 5:08CV00016, 2008 WL 539939, at *2 (E.D. Ark. Feb. 19, 2008) (dismissing Section 1983 claim where plaintiff alleged "only that there was a clerical error in the manner in which the [prison] disciplinary violation form was completed.  However, a violation of prison policy is not actionable." (citing Gardner v. Howard, 109 F.3d 427, 430 (8th Cir. 1997))).

Mr. Piñero's fourth and fifth claims, however, warrant further discussion.  On the facts alleged, the plaintiff may have claims under the Due Process Clause of the Fourteenth Amendment, which provides inmates with a qualified right to call witnesses in disciplinary hearings,[11] see Wolff v. McDonnell, 418 U.S. 539, 566

---

[11] The plaintiff also alleges that his disciplinary hearings were not electronically recorded, which does not make out a violation under federal law.  See Dixon v. Goord, 224 F. Supp. 2d 739, 744 (S.D.N.Y. 2002) ("While New York law requires that an

(1974) ("[T]he inmate facing disciplinary hearings should be allowed to call witnesses . . . when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."); accord McCann v. Coughlin, 698 F.2d 112, 122 (2d Cir. 1983), and protects prisoners' liberty interest in "freedom from restraint" -- such as disciplinary or segregated confinement -- which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," Sandin v. Conner, 515 U.S. 472, 484 (1995); see Borcsok v. Early, 299 Fed. Appx. 76, 78 (2d Cir. 2008).   Mr. Piñero may also have a claim under the Eighth Amendment, which protects prisoners from cruel and unusual punishment, including disciplinary confinement, when it is grossly disproportionate to the infraction.   See Smith v. Coughlin, 748 F.2d 783, 787 (2d Cir. 1984) (citing Rhodes v. Chapman, 452 U.S. 337, 346 (1980)).

However, as noted, Mr. Piñero has failed to name a defendant who was personally involved in the asserted deprivations or, aside from stating that he was in disciplinary confinement for 230 days, alleged facts sufficient to survive a motion to dismiss either claim.   To properly plead his "excessive punishment" claim, the

---

electronic record of a disciplinary hearing be maintained such a record is not constitutionally required." (internal citation omitted)).

plaintiff must plausibly show that his "restricted confinement within [the] prison . . . impose[d] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." <u>Borcsok</u>, 299 Fed. Appx. at 78 (internal quotation marks omitted). "Factors relevant to determining whether the plaintiff endured an 'atypical and significant hardship' include 'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2d Cir. 2004) (quoting <u>Wright v. Coughlin</u>, 132 F.3d 133, 136 (2d Cir. 1998)). For example, "[c]onfinement for 101 days or fewer under typical punitive segregation conditions generally does not constitute atypical conditions of confinement. . . . [But] [e]ven if an inmate is segregated for fewer than 101 days, a violation of his liberty interest may be implicated if the conditions were more severe that the normal punitive segregation conditions or a more fully developed record showed that even relatively brief confinements under normal punitive segregation conditions were, in fact, atypical." <u>Edwards v. Horn</u>, No. 10 Civ. 6194, 2012 WL 473481, at *9 (S.D.N.Y. Feb. 14, 2012) (internal citations and quotation marks omitted) (citing <u>Bunting v. Nagy</u>, 452 F. Supp. 2d 447, 456 (S.D.N.Y. 2006), and <u>Davis v. Barrett</u>, 576 F.3d 129, 133

(2d Cir. 2009)); see also Colon v. Howard, 215 F.3d 227, 231-32 (2d Cir. 2000) (finding that 305 days of special housing unit confinement, under normal conditions, infringed plaintiff's liberty interest); Thomas v. Calero, __ F. Supp. 2d __, __, 2011 WL 1532061[12] (S.D.N.Y. April 20, 2011) (denying motion to dismiss where inmate's confinement in special housing unit for 291 days was sufficient to implicate a liberty interest).  The plaintiff must also identify the individuals responsible for any deprivation he may have suffered.

Likewise, to state a right-to-call-witnesses claim, Mr. Piñero would need to allege sufficient facts regarding, for instance, the hearings in which the deprivation occurred, the nature of the infractions at issue, how the witnesses he sought to call were relevant, the hearing officers who precluded him from calling witnesses, and the reasons given, if any, for the denials.  See, e.g., Johnson v. Coombe, 156 F. Supp. 2d 273, 278-79 (S.D.N.Y. 2001) (holding that prisoner's due process rights were violated when prisoner requested to call two witnesses, but they were never produced and no explanation was offered for their absence); Brodie v. Kuhlman, No. 96 Civ. 0328, 1997 WL 335657, at *2 (S.D.N.Y. June 17, 1997) (denying summary judgment on due process claim where

---

[12] Westlaw does not list page numbers for this opinion.

31

plaintiff demonstrated relevancy of witnesses sought for disciplinary hearings and request was denied), <u>summary judgment granted on other grounds on reconsideration</u>, 1997 WL 411932 (S.D.N.Y. July 23, 1997); <u>see also</u> <u>Williams v. Smith</u>, 781 F.2d 319, 324 (2d Cir. 1986) (denying summary judgment where plaintiff sufficiently alleged that Superintendent of Attica Correctional Facility affirmed his convictions in prison disciplinary hearings in which he was denied the right to call witnesses).  On the facts as alleged, however, Mr. Piñero does not state a cause of action for any of his conditions of confinement claims.

   ii. <u>Failure to Exhaust Administrative Remedies</u>

       Finally, the plaintiff's conditions of confinement claims must be dismissed because he has failed to exhaust all available administrative remedies prior to filing suit in federal court.  42 U.S.C. § 1997e(a).  The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002).  Strict compliance with a prison's administrative process is required, <u>McCoy v. Goord</u>, 255 F. Supp. 2d 233, 246 (S.D.N.Y. 2003) (citing <u>Hemphill v. New York</u>, 198 F. Supp. 2d 546, 549 (S.D.N.Y. 2002)), and an inmate must properly and fully exhaust his grievance, <u>Baez v. Kahanowicz</u>, 278 Fed. Appx. 27, 29 (2d Cir.

2008).   To pursue a federal lawsuit based on a claim that has not gone through the administrative grievance process, the plaintiff must show that the grievance system was unavailable to him. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004); Abney v. McGinnis, 380 F.3d 663, 667 (2d Cir. 2004).   Exhaustion is mandatory, and failure to exhaust is an absolute bar to the commencement of a federal suit.   Johnson v. Rowley, 569 F.3d 40, 45 (2d Cir. 2009).

In the present case, it is undisputed that the plaintiff's fourth and fifth conditions of confinement claims are not exhausted because he did not grieve them before bringing this suit. (Callahan Aff., Exh. A).   Moreover, there is no dispute regarding the steps of the grievance process that the plaintiff was required to complete, and Mr. Piñero does not allege that the grievance system was unavailable to him.   Therefore, the plaintiff's claims should be dismissed.

D.   Municipal Liability

Municipalities may only be liable under Section 1983 if the violation of the plaintiff's federal rights resulted from an official policy, custom, or practice of the municipal body.   City of St. Louis v. Prapotnik, 485 U.S. 112, 121-22 (1988); Monell v. Department of Social Services of New York, 436 U.S. 658, 694 (1978).   The plaintiff does not name Rockland County or the Town of

33

Haverstraw as a defendant.  However, to the extent that the plaintiff's Amended Complaint can be construed to allege <u>Monell</u> liability in this case, he does not identify any policy, custom, or practice of Rockland County or the Town of Haverstraw in support of his Section 1983 claims.  Consequently, any putative claims against these entities must be dismissed.

E.  <u>State Law Claims</u>

Finally, the defendants seek to dismiss the plaintiff's state law claims for failure to file a notice of claim.  New York General Municipal Law ("GML") § 50-e requires plaintiffs asserting state tort law claims against a municipality, its officers, agents, or employees to serve a notice of claim within ninety days after the claim arises.  GML § 50-e.  Moreover, where state tort claims are asserted against a county, its officers, agents, or employees, New York County Law § 52 mandates compliance with the ninety-day limitations period set forth in GML § 50-e.  N.Y. County Law § 52. In addition, GML § 50-i(1)(b) requires that "it shall appear by and as an allegation in the complaint or moving papers that at least thirty days have elapsed since the service of such notice and that adjustment or payment thereof has been neglected or refused . . . ."  GML § 50-i(1)(b).

A plaintiff who has not timely filed a notice of claim may extend the time to do so pursuant to GML § 50-e(5), which provides

for late filing of a notice of claim upon application to a state court.  GML § 50-e(5); see Brown v. Metropolitan Transportation Authority, 717 F. Supp. 257, 259 (S.D.N.Y. 1989).  However, the application to file a late notice of claim may not be made more than one year and ninety days after the cause of action has accrued.  Id. at 259 (citing Pierson v. City of New York, 56 N.Y.2d 950, 954, 453 N.Y.S.2d 615, 617 (1982)).

These provisions have been strictly construed by both state and federal courts.  See Patterson v. City of New York, No. 97 Civ. 7159, 2000 WL 547020, at *1 (S.D.N.Y. May 4, 2000) (citing Hardy v. New York City Health & Hospitals Corp., 164 F.3d 789, 793-94 (2d Cir. 1999) (collecting cases)).  Failure to comply with these requirements requires a dismissal for failure to state a cause of action.  See Brown, 717 F. Supp. at 259-60.

### 1.   Officer DelaRosa and the Town of Haverstraw

As for Mr. Piñero's state law claims against Officer DelaRosa and the Town of Haverstraw,[13] the plaintiff's failure to file a notice of claim renders his claims time-barred.  Moreover, Mr. Piñero is precluded from filing a late notice of claim pursuant to GML § 50-e(5), as his application to do so would be made more than

---

[13] As noted above, the plaintiff does not name the Town of Haverstraw as a defendant and, in any case, has failed to state a Monell claim against it.

one year and ninety days after any cause of action accrued.  The plaintiff's state cause of action for false imprisonment accrued upon his release from confinement on June 16, 2010, see Bailey v. Pataki, No. 08 Civ. 8563, 2010 WL 4237071, at *6 (S.D.N.Y. Oct. 26, 2010) (citing Lynch v. Suffolk County Police Department, Inc., 348 Fed. Appx. 672, 675-76 (2d Cir. 2009)), and his cause of action for malicious prosecution accrued when the charges against him were dismissed on August 6, 2010, see Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995) ("[F]or claims based in malicious prosecution, this period starts to run only when the underlying criminal action is conclusively terminated.").  Therefore, the limitations period for an application to file a late notice of claim expired on September 15, 2011, and November 5, 2011, respectively, thereby precluding the plaintiff from curing his failure to comply.  Every other state law cause of action asserted by the plaintiff accrued prior to accrual of his false imprisonment and malicious prosecution claims, and are also time-barred.

    2.   Rockland County Defendants

As for the County defendants, service of a notice of claim upon a county employee is a condition precedent to the commencement of an action where the county has a duty to indemnify that employee.  See Bielski v. Green, 674 F. Supp. 2d 414, 428 (W.D.N.Y. 2009) (citing Grasso v. Schenectady County Public Library, 30

A.D.3d 814, 817, 817 N.Y.S.2d 186, 189 (3d Dep't 2006)).  "A county's duty to indemnify one of its officials or employees 'turns on whether [that individual was] acting within the scope of [his] employment, and if that local option was formally adopted by a local governing body.'"  Id. (citing Grasso, 30 A.D.3d at 818, 817 N.Y.S.2d at 190 (citing N.Y. Pub. Off. L. § 18(1)(a), (b), and (4)(a))).  Rockland County Code § 45-3(A) provides that "[t]he County shall indemnify and save harmless its employees in the amount of any judgment obtained against such employee in any municipal, state or federal court, or in the amount of any settlement of a claim, provided that the act or omission from which such judgment or settlement arose, occurred while the employee was acting in good faith and within the scope of his or her public employment or duties."  (Def. Memo. at 8; Rockland County Code § 45-3(A) (1989), available at http://www.ecode360.com/9663634).

Given the County's statutory duty to indemnify its employees, and the plaintiff's failure to allege any facts indicating that the actions taken by the County defendants were outside the scope of their employment, the notice of claim requirements apply with full force in this case.  Mr. Piñero's failure to comply, and his inability to cure the defect, requires that his state law claims against the County defendants be dismissed.

Conclusion

For the reasons stated above, I recommend that the defendants' motions to dismiss (Docket Nos. 34 and 39) be granted.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the chambers of the Honorable Jed S. Rakoff, U.S.D.J., Room 1340, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE.

Dated: New York, New York
       March 13, 2012

Copies mailed this date to:

Frankie Piñero
P.O. Box 834
Haverstraw, New York  10927

38

Robert B. Weissman, Esq.
Saretsky Katz Dranoff & Glass LLP
475 Park Avenue South
New York, New York  10016

Carl S. Sandel, Esq.
Drew W. Sumner, Esq.
Morris Duffy Alonso & Faley
Two Rector Street, 22nd Floor
New York, New York  10006